UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SMALL HEARTS DAYCARE CENTER II, LLC and WALTER COLEMAN )))) | |
| Plaintiffs, ))  | |
| vs. ) | Case No. 4:09CV2132 HEA |
| KATHY QUICK, ))) | |
| Defendant. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 147].  Plaintiffs oppose the Motion.  For the reasons set forth below, the Motion is granted.

**Introduction and Background**

Plaintiff Walter Coleman is the owner and operator of Plaintiff Small Hearts Daycare Center II, LLC, a child care center located in St. Louis, Missouri. Child care facilities are regulated by the Missouri Department of Health and Senior Services (DHSS) through its Section for Child Care Regulation (SCCR). Defendant Quick is the Administrator of SCCR.  In August 2009, Defendant denied Plaintiffs' application to renew their child-care license. They also directed

Plaintiffs to cease providing care to more than four unrelated children and informed third-party agencies that Small Hearts was unlicensed. Plaintiffs assert that they were entitled to administrative and judicial review of the agency's decision to deny renewal before Defendant took these actions. Plaintiffs claim their due process rights pursuant to 42 U.S.C. § 1983 were violated; and state a claim for tortious interference with a business expectancy.

On January 28, 2010, the Court entered a temporary restraining order that barred Defendant from claiming that Plaintiffs were operating without a license or On February 8, 2010, the parties agreed to the entry of consent preliminary injunction that allowed Plaintiffs to operate their facility pending administrative review. On June 6, 2010, Plaintiffs dismissed their claims for a permanent injunction because Plaintiffs voluntarily relinquished their license on November 5, 2010.

## Standard for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."

The standard for summary judgment is well settled. In determining whether

summary judgment should issue, the Court must view the facts and the inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 918, 921 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and show that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must adduce specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256, *Littrell*, 459 F.3d at 921.

The nonmoving party must articulate and substantiate specific facts showing a genuine dispute of material fact. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United Life of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed.R.Civ.P. 56(e)); "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986); *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). A disputed fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on a factual issue. *Anderson*, 477 U.S. at 248; *Woods*, 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Wilson v. Int'l Bus. Machs. Corp.,* 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted);" *Putnam v. Unity Health System*, 348 F.3d 732, 733--34 (8th Cir. 2003). A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson* 62 F.3d at 241 (8th Cir. 1995); *Smith v. International Paper Co.*, 523 F.3d 845,848 (8th Cir. 2008). "The mere scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. 242 at 252; *Davidson & Assoc. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005); *Smith*, 523 F.3d at 848.

## Material Facts[1]

On October 22, 2007, DHSS issued Small Hearts a license to operate a child day care facility that was, by the terms of the license, to expire on August 31, 2009.

On July 7, 2008, Small Hearts was cited for caring for fourteen (14) children over its licensed capacity.

On or about June 24, 2009, DHSS received multiple complaints regarding Small Hearts. On June 29, 2009, DHSS investigated the June 24, 2009, complaint allegations. On July 2, 6, 7 and 8, 2009, DHSS conducted further investigations into the June 24 complaint.

On July 16, 2009, DHSS notified Small Hearts that the June 24 complaint was substantiated.

On July 21, 2009, DHSS notified Small Hearts of an amended report substantiating the June 24, 2009, complaints specifically finding that Small Hearts submitted claims to the Department of Social Services, Child Care Subsidy program for a child who did not attend Small Hearts and for submitting false training certificates to DHSS.

On or about September 1, 2009, Small Hearts was issued a license that

---

[1] The material facts are taken primarily from Defendant's submission, to which Plaintiffs responded. Plaintiffs' objections to Defendant's facts are primarily based on legal argument or have no support in the record.

expired October 31, 2009.

On or about October 8, 2009, DHSS notified Small Hearts of its decision to deny its application to renew its child care license.

On November 1, 2009, DHSS issued Small Hearts a short term thirty day license for November 1, 2009 through November 30, 2009 to allow the facility time to wind down operations and/or to pursue applicable legal remedy.

On November 3, 2009, via letter, DHSS notified Small Hearts via letter to confirm the receipt from Small Hearts of a request for a hearing.

On November 3, 2009, via letter, DHSS notified Small Hearts that if it wished to continue providing child care after November 30, 2009, that it may seek an injunction in a circuit court of proper venue while the issue is litigated.   Small Hearts failed to seek an injunction in state circuit court on or before November 30, 2009.

Small Hearts short-term thirty day license expired on November 30, 2009.  Small Hearts had requested a hearing before the AHC.  Instead of proceeding to a hearing before the Administrative Hearing Commission, Small Hearts and Walter Coleman and the Missouri Department of Health and Senior Services, Section for Child Care Regulation (DHSS) entered into a Settlement Agreement, styled Joint Motion for Consent Order, Joint Stipulation of Facts and Conclusions of Law, Joint

Disciplinary Order and Waiver of Hearing Before the Administrative Hearing Commission.  "Small Hearts stipulates that the factual allegations contained in this Joint Stipulation are true and stipulates with the DHSS that Small Hearts' license for a day care center, no. 0001942536, is subject to disciplinary action by the DHSS in accordance with the relevant provision of Chapter 210, RSMo." In the Joint Stipulation, Small Hearts stipulated to the following:

> 16. Nineteen CSR 30-62.105 (d) is a regulation established pursuant to the authority of § 210.221.1(3), RSMo.
>
> 17. Nineteen CSR 30-62.105(D) states as follows:
>
>> Caregivers shall be of good character and intent and shall be qualified to provide care conducive to the welfare of children.
>
> 18. On or about May 2009, Small Hearts billed the Department of Social Services, for child-care related to Child A.
>
> 19. On or about May 2009, Child A was not enrolled with Small Hearts.
>
> 20. On or about May 2009, Child A did not attend Small Hearts.
>
> 21. On or about May 2009, Small Hearts did not provide child-care related services to Child A.
>
> 22. On or about May 2009, Small Hearts knew or should have known that Child A did not attend its facility.
>
> 23. Under the circumstances described herein, Small Hearts violated 19 CSR 30-62.105 (D).

24. Nineteen CSR 30-62.132(7)(E) is a regulation established pursuant to the authority of § 219,221,1(3), RSMo.

25. Nineteen CSR 30-62.32(7)(E) states as follows:
Completion by the parent(s) of the following written information, which shall be on file before the child is accepted for care; instructions for action to be taken if the parent(s) cannot be reached in an emergency and permission for emergency medical care.

26. Nineteen CSR 30-62.132(7)(E) 8 is a regulation established pursuant to the authority of § 210.221.1(3), RSMo.

27. Nineteen CSR 30-62.132(7) (E)8 states as follows:

> 8. Acknowledgment [sic] by the parent(s) that-
>
> A. They have received a copy of the provider's policies pertaining to admission, care and discharge of children;
>
> B. They have been informed that the Licensing Rules for Group Day Care Homes and Child Day Care centers in Missouri are available in the facility for their review;
>
> C. They and the provider have agreed on a plan for continuing communication regarding the child's development, behavior and individual needs; and they understand and agree that the child may not be accepted for care when ill.

28. Nineteen CSR 30-62.222(1) is a regulation established pursuant to the authority of § 210.221.1(3), RSMo.

29. Nineteen CSR 30-62.222(1) states as follows:

The child care provider shall maintain accurate records to meet Administrative requirements and to ensure knowledge

of the individual needs of children and their families.

30. Nineteen CSR 30-62.222 (2) is a regulation established pursuant to the Authority of § 210.221.1(3), RSMo.

31. Nineteen CSR 30-62.222(2) states as follows:

An individual file shall be kept to identify each child and enable the Provider to communicate with the parent(s), guardian or legal Custodian of the child in an emergency. Records shall include:

> (A) The child's full name, address, birth date and the date care Begins and ends;
>
> (B) Full name of the parents(s), guardian or legal custodian, home Address, employer's name and address, work schedule, and home And work telephone numbers;
>
> (C) Name, address and telephone number of another individual (friend or relative) who might be reached in an emergency when the Parent(s), guardian or legal custodian cannot be reached; Name and Phone number of the family physician, hospital, or both, to be used In an emergency;
>
> (D) Name of the individual(s) authorized to take the child from the facility;
>
> (E) Field Trip and transportation authorization.

32. On or about July 2, 2009, DHSS determined that seventy-five (75) of the seventy-seven (77) enrollment records reviewed were incomplete and missing some or all of the enrollment information required.

33. Nineteen CSR 30-62.222(1) is a regulation established pursuant to the authority of § 210.221.1(3), RSMo.

34. Nineteen CSR 30-62.222(1) states as follows:

> The child care provider shall maintain accurate records to meet administrative requirements and to ensure knowledge of the individual needs of children and their families.

35. Nineteen CSR 30-62.222(6) is a regulation established pursuant to the Authority of § 210.221.1(3), RSMo.

36. Nineteen CSR 30-62.222(6) states as follows:

> Daily child attendance records shall be maintained and kept on file a minimum of one (1) year.

37. On or about June 29, 2009, DHSS determined that nine (9) of the children that were present at Small Hearts were not signed in for the day and there was no other form of attendance to show who was present.

38. Nineteen CSR 30-62.222 (8) is a regulation established pursuant to the Authority of § 210.221.1(3), RSMo.

39. Nineteen CSR 30-62.222(3) states as follows:

> All enrollment records, medical examination records and attendance records shall be filed in a place known to care givers and shall not be in a locked area or removed from the facility during the hours the facility is open and operating.

40. Nineteen CSR 30-62.222 (16) is a regulation established pursuant to the Authority of § 210.221.1(3), RSMo.

41. Nineteen CSR 30-62.222 (16) states as follows:
All records shall be available in the facility for inspection by the department upon request.

42. On or about July 7, 2009, Small Hearts failed to have requested

records available for DHSS inspection.

43. Under the circumstances described herein, Small Hearts violated 19 CSR 30-62.132(7)(E ), 19 CSR 30-62.132(&) (E )8, A, B, and C, 19 CSR 30.62.222(1), 19 CSR 30-62.222(2)(A), (B),(C), (D), and €, 19 CSR 30-62.222(1), (6), (8), and (16).

44. Nineteen CSR 30-62.112(1) is a regulation established pursuant to the authority of § 210.221.1(3), RSMo.

45. Nineteen 30-62.112(1) states as follows:

> The following staff/child ratios shall be maintained on the premises at all times: Mixed Age Groups Two (2) Years and Up. Groups composed of mixed ages of children two (2)-years of age and older shall have no less than one (1) adult to ten (10) children with a maximum of four (4) two(2)-year olds. When there are more than four (4) two (2)-year olds in a mixed group, the staff/child ration shall be no less than one (1) adult to eight (8) children.

46. On or about July 7, 2009, DHSS observed forty-nine (49) children ages three (3) years to school-age being cared for by three (3) caregivers.

47. Nineteen CSR 30-62.042(3)(W) is a regulation established pursuant to the authority of § 210.221.1(3), RSMo.

48. Nineteen CSR 30-62.042(3)(W) states as follows:

> The number and ages of children the facility is authorized to have in care at any one (1) time shall be specified on the license and shall not be exceeded except as permitted within these rules.

49. On or about July 7, 2008, DHSS observed forty-nine (49) children in care. The facility was licensed to care for thirty-five (35) children.

50. Under the circumstances described herein, Small Hearts violated 19 CSR 30-62.112(1) and 19 CSR 30-62.042(3)(W).

51. The Department of Health and Senior Services (DHSS) is a state agency under § 192.005 vested with authority to license and regulate child-care facilities. Mo.Rev. Stat. §§ 210.201 through 210.259 RSMo.

52. Childcare facilities in Missouri may not operate without a license. Mo. Rev. Stat. § 210.211.

53. DHSS licenses only those facilities that pass an inspection. Mo.Rev.Stat. § 210.221(1).

## Discussion

**Due Process Claims**

Defendant, in her individual capacity, argues that she is entitled to qualified immunity on Plaintiffs's due process claims. Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. See, *Wallingford v. Olson*, 592 F.3d 888, 891 (8th Cir.2010); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Young v. Harrison*, 284 F.3d 863, 866 (8th Cir.2002); *Winters v. Adams*, 254 F.3d 758, 766 (8th Cir.2001).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the

'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." *Wilson*, at 614.  The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  As a consequence, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'"  *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir.1996).

In determining whether a public official has violated a clearly established constitutional right, the reviewing Court has discretion to determine which prong of the two-part test to address first. See, *Heartland Academy Community Church v. Waddle*, 595 F.3d 798 (8th Cir. 2010), citing *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 818 (2009).

The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences. In determining whether an officer is

entitled to qualified immunity, the Court asks: (1) whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that the official's conduct violated a constitutional right; and (2) whether the asserted constitutional right is clearly established. The Court may address either question first. If either question is answered in the negative, the public official is entitled to qualified immunity. To determine whether a right is clearly established the Court asks whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Wallingford v. Olson*, 592 F.3d at 892 (internal citations and quotations omitted).

The Eighth Circuit Court of Appeals has articulated the standard for determining the question of qualified immunity.  The question

> involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (holding that *Saucier*'s two-step sequence is not mandatory). "Under the rule established in *Pearson,* we have the discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.' " *Fields v. Abbott,* 652 F.3d 886, 890 (8th Cir.2011) (quoting *Pearson,* 555 U.S. at 236, 129 S.Ct. 808).

*Santiago v. Blair,* 707 F.3d 984, 989-90 (8th Cir. 2013).

The matter of whether Defendant is entitled to qualified immunity has been addressed by the Eighth Circuit Court of Appeals in a very factually similar case, and has determined that qualified immunity applies to Plaintiffs' claims.

> To have a constitutionally cognizable property interest in a right or a benefit, a person must have "a legitimate claim of entitlement to it." See *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Due Process Clause does not create any property interest; it merely protects property rights arising "from an independent source such as state law." *Id*. A property interest arises when state law creates "expectations that are 'justifiable.' " *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 796, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (quoting *Vitek v. Jones*, 445 U.S. 480, 489, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)). No property interest arises where the statutory claim to a benefit is "too ephemeral and insubstantial." *Id*. (quoting *Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)) (internal quotation marks omitted).
>
> [Plaintiff] has not demonstrated it had a clearly established property interest in renewal of its license. Under Missouri law, a licensed entity may have a property interest in an existing valid license, which may not "be impaired, suspended, or revoked" without due process. *Mo. Real Estate Comm'n v. Rayford*, 307 S.W.3d 686, 692 (Mo.App.2010); see *ARO Sys. v. Supervisor of Liquor Control*, 684 S.W.2d 504, 507 (Mo.App.1984) (recognizing sanctions impairing the licensed entity's use of a valid liquor license implicate due process protections); *Crum v. Mo. Dir. of Revenue*, 455 F.Supp.2d 978, 986 (W.D.Mo.2006) (determining revocation of a physician's license implicated due process protections). Missouri law is less clear when it comes to license renewal proceedings. See, e.g., *Zenco Dev. Corp. v. City of Overland*, 843 F.2d 1117, 1118–19 (8th Cir.1988) (holding the district court did not err in determining a licensed entity had no due process rights attendant to liquor license renewal proceedings under Missouri law); *State ex rel. Garrett v. Randall*, 527 S.W.2d 366, 373 (Mo.1975) (en banc); *Vaughn v. Ems*,

> 744 S.W.2d 542, 547–48 (Mo.Ct.App.1988); *State ex rel. Payton v. City of Riverside*, 640 S.W.2d 137, 142 (Mo.Ct.App.1982). [Plaintiff] has not cited, nor have we found, any statutes or cases establishing that licensed facilities have a property interest in a license renewal under Missouri law.
>
> The DHS defendants reasonably could have concluded [Plaintiff] had no constitutionally protected property interest in the renewal of its license, and such a conclusion entitles them to qualified immunity. See *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir.2007) (explaining, public officials are entitled to qualified immunity unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (internal quotation marks omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir.2004)) (internal quotation marks omitted).
>
> Qualified immunity is particularly appropriate in this instance because the DHS defendants were operating under conflicting statutory directives. DHS was required under Mo.Rev.Stat. § 210.245(2) to give [Plaintiff] notice and, upon [Plaintiff]'s request, a hearing. However, [Plaintiff]'s license expired on July 31, 2007, and Mo.Rev.Stat. § 210.211.1 explicitly prohibited [Plaintiff] from operating a childcare facility without a license "in effect." Once [Plaintiff]'s license expired, DHS could not provide [Plaintiff] with pre-deprivation notice—the license expired by operation of law—while simultaneously enforcing the licensing requirement. We cannot say the DHS defendants' attempt to resolve this foggy statutory conflict was constitutionally unreasonable.

*Austell v. Springer*, 690 F.3d 929, 935 (8th Cir. 2012).

Under this clear directive from the Eighth Circuit regarding the same challenges Plaintiffs herein make, Defendant is entitled to qualified immunity on

Plaintiff's property right claims.

With regard to Plaintiff's challenge to Defendant's failure to provide Plaintiffs with a name clearing hearing before the Administrative Hearing Commission, (AHC) to have the merits addressed, Plaintiffs' own actions foreclose any basis upon which to prevail. Rather than going before the AHC, Plaintiffs voluntarily entered into the "Joint Motion for Consent Order Joint Stipulation of Facts and Conclusions of Law, Joint Disciplinary Order and Waiver of Hearing Before the Administrative Hearing Commission." The Consent Order entered by the AHC specifically provided that the parties had stipulated to certain facts and waived their right to a hearing before the Commission. Accordingly, the Commissioner ruled that Plaintiffs were subject to discipline under Section 210.221.1(2) of the Missouri Revised Statutes.

Plaintiffs allege they are entitled to an appeal of the non-renewal of the license under Chapter 621, Rev.Stat.Mo. To the contrary, as Defendant correctly argues, the specific procedure with regard to child care licenses is found in Chapter 210. Section 210.245.2 provides the exclusive procedure by which DHSS may deny a renewal application and by which Plaintiffs could seek administrative review before the AHC. *Austell*, 690 F.3d at 936.

Moreover, even if Chapter 621 should have been followed, Plaintiffs have

- 17 -

failed to establish that this failure gives rise to a constitutional violation, which is essential to a Section 1983 claim of constitutional violations.

In her official capacity, Defendant correctly argues that the Eleventh Amendment bars this action.

**Tortious Interference**

Once again, the *Austell* decision determines the insufficiency of Plaintiffs' tortious interference claim:

> [Plaintiff]'s tortious interference claim fails as a matter of law. In Missouri,[2] public officials exercising discretionary duties, as opposed to ministerial duties, are entitled to official immunity from suit for "all discretionary acts" unless the officials acted "in bad faith or with malice," which ordinarily requires "actual intent to cause injury." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446–47 (Mo.1986) (en banc).
>
> [T]he decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity. *Kanagawa v. State by and through Freeman*, 685 S.W.2d 831, 836 (Mo.1985) (en banc); see also *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo.2008) (en banc) (explaining discretionary duties are those that require the application of reasoned decision-making, whereas ministerial functions are "of a

---

[2] In its footnote, the *Austell* Court recognized the applicability of Missouri law. "We apply Missouri law to [plaintiff]'s state-law claims," which come under our "supplemental jurisdiction." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir.2011); see also 28 U.S.C. § 1367. *Austell,* 690 F.3d at 938, n. 4.

> clerical nature ... perform[ed] ... without regard to [the official's] judgment or opinion concerning the propriety of the act to be performed") (quoting *Kanagawa*, 685 S.W.2d at 836).
>
> In this case, [Defendant]'s actions were discretionary, not ministerial. This is not a "clerical" task capable of being performed "without regard to [Defendants] judgment or opinion." *Southers*, 263 S.W.3d at 610. Decisions regarding how or when to enforce a perceived license violation "involve policymaking [and] the exercise of professional expertise and judgment," and withholding official immunity would likely hamper DHS's license enforcement actions in the future. *Kanagawa*, 685 S.W.2d at 836.
>
> On appeal, [Plaintiffs] ha[ve] made no effort to demonstrate [Defendants] acted "in bad faith or with malice" and with "actual intent to cause injury" required to overcome official immunity. See *Twiehaus*, 706 S.W.2d at 446–47. Nor did [Defendant] make this argument in opposing the DHS defendants' summary judgment motions below. It is far from clear on this record that [[Plaintiff]'s allegations and evidence would support a finding of bad faith or malice, and particularly an actual intent to injure [Plaintiff]. The Missouri Supreme Court has affirmed a claim's dismissal where the plaintiff failed to demonstrate the public official's bad faith and therefore the plaintiff could not overcome official immunity. See *Charron v. Thompson*, 939 S.W.2d 885, 887 (Mo.1996) (en banc).

*Austell*, 690 F.3d at 938-39.

## Conclusion

Based upon the foregoing, Defendant has established that there exist no dispute as to any material fact, pursuant to Rule 56, and is therefore entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment [Doc. No. 147] is granted.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 16th day of January, 2014.

                                              _____
                                                  HENRY EDWARD AUTREY
                                           UNITED STATES DISTRICT JUDGE