IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SMALL HEARTS DAYCARE CENTER II, LLC, & WALTER COLEMAN, | } } |
| Plaintiffs, | } } |
| V. | } CAUSE NO. 4:09-cv-2132 HEA } |
| KATHY QUICK, | } } } |
| Defendants. | } |

MOTION FOR INTERIM ATTORNEY'S FEES
AGAINST KATHY QUICK IN HER OFFICIAL CAPACITY

Plaintiffs by and through counsel, Rufus J. Tate, Jr. and Anthony D. Gray, move for Attorney's Fees Against Kathy Quick in her Official Capacity pursuant to 42 U.S.C. § 1988 and Rule 54 of the Federal Rules of Civil Procedure, and state the following:

1) On October 22, 2007, HSS[1] duly issued to plaintiffs a daycare license which was set to expire on August 31, 2009;

2) Quick has admitted that plaintiffs duly requested daycare license renewal in accordance with HSS regulations.  Quick Answer ¶ 8 [Doc. # 33];

3) Quick did not issue to plaintiffs a renewed license;

4) On October 8, 2009, Quick proposed denial of plaintiffs' renewal application, and advised plaintiffs of their right to a pre-deprivation hearing before the AHC[2]. *Id.* at ¶ 12;

5) In response, plaintiffs duly requested an AHC hearing. *Id.* at ¶ 15;

6) On January 28, 2009, this Court essentially determined that plaintiffs' request for AHC administrative review effectively stayed the proposed discipline pending the outcome of

---

[1] "HSS" refers to the Missouri Department of Health and Senior Services.

[2] "AHC" refers to the Missouri Administrative Hearing Commission.

1

the requested AHC hearing. *See e.g.* TRO at 5 [Doc. # 24] ("That review has yet to occur … Plaintiffs have yet to have a hearing, and have yet to have a determination of any shortcomings with respect to the daycare… .");

7) Plaintiffs challenged, as constitutionally defective, several aspects of Quick's administrative actions related to her notice of proposed denial of license renewal, including, but not limited to:

   a. Advising third parties that plaintiffs were operating without a valid license before any AHC determination had been rendered;

   b. Advising third parties that plaintiffs were subject to criminal penalties if they failed to immediately cease providing care for more than four unrelated children before any AHC determination had been rendered;

   c. Advising third parties that plaintiffs were "closed" for business before any AHC determination had been rendered;

   d. Knowingly causing certain third parties to terminate their contractual or confidential relationship with plaintiffs before any AHC determination could be requested; and

   e. Knowingly causing DSS[3] to order parents then being served by plaintiffs to immediately transfer their children to different daycares because plaintiffs were allegedly "unqualified" or "closed."

8) This Court expressly determined that Quick's actions deprived plaintiffs of due process. *Id.* at 5 ("[D]efendant's letters to third parties, much like an edict of the Crown, have, in effect, deprived Plaintiffs of their property. Plaintiffs … have been told they cannot operate the daycare. Clearly, these actions have deprived Plaintiffs of their property

---

[3] "DSS" refers to the Missouri Department of Social Services.

without due process, without an opportunity to be heard.  A procedure which allows a hearing, but implements the penalties prior to the hearing, is a farce and a nullity.");

9) This Court expressly determined that plaintiffs suffered irreparable injury as a consequence of Quick's actions. *Id;*

10) In her capacity as the section administrator, Quick's actions did not reflect the random and unauthorized actions of a low-level employee; rather, Quick's actions reflected HSS policy or custom;

11) By February 5, 2010, even Quick agreed that plaintiffs' evidence in the TRO hearing warranted entry of a Preliminary Injunction. *See,* Consent Motion for Preliminary Injunction [Doc. 29];

12) On February 8, 2010, this Court entered its Preliminary Injunction [Doc. # 30] after reviewing plaintiffs' evidence in accordance with Rule 65 and *Dataphase Sys. Inc. v. C. L. Sys., Inc.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (*en banc*);

13) This Court specifically considered the likelihood of success on the merit of plaintiffs' essential procedural due process claim.  This Court considers "likelihood of success on the merits" the "most significant *Dataphase* factor."  Preliminary Injunction at 6 (citing *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992));

14) No adequate remedy at law existed;

15) This Court captured the essence of plaintiffs' claim when it asked:

> Rhetorically, one would wonder what would be the point of a hearing at this stage since Plaintiffs' license has expired. What could be gained from a hearing subsequent to the expiration of the license and the notification of the agencies placing children at the

3

> daycare that Small Hearts is not licensed. An administrative hearing without the requested injunctive relief is a mockery of the meaning of due process.

*Id.*

16) Plaintiffs sought an injunction during the pendency of the AHC administrative review;

17) This Court granted plaintiffs precisely the relief they were seeking, i.e.,

   a. An order restraining Quick from treating or causing others to treat plaintiffs as if they were operating a daycare without a license;

   b. An order requiring Quick to retract her prior defamatory remarks from each and every entity to whom she directed those remarks;

   c. An order requiring Quick to provide to each entity to whom she directed any defamatory remarks a copy of the Preliminary Injunction; and

   d. An order requiring Quick to recognize plaintiffs as operating with a valid license.

   *Id.* at 2-3; TRO at 7-8 [Doc. # 24];

18) Despite plaintiffs' timely request for AHC administrative review, Quick unilaterally caused an emergency situation which required this Court's immediate attention in order to save plaintiffs' business from utter collapse before any AHC review could be had;

19) Given Quick's vigorous defense at the TRO hearing, this Court determined that Quick would not voluntarily alter her course of conduct, and determined that the Preliminary Injunction was necessary;

20) This Court's Preliminary Injunction did not simply maintain the status *quo*. Following a full evidentiary hearing, the Court determined that plaintiffs had demonstrated a likelihood of success on the merits of their claim;

4

21) This Court's Preliminary Injunction materially altered the relationship between the parties, and directly benefited plaintiffs;

22) The Preliminary Injunction functioned "much like the grant of an irreversible partial judgment on the merits" because (i) it gave the plaintiffs all the relief that they could reasonably expect and (ii) plaintiffs' request for a permanent injunction became moot when plaintiffs surrendered their license after the AHC proceedings concluded in their favor;

23) Following that due process hearing, Quick renewed plaintiffs' daycare license without further disruption or interference;

24) Plaintiffs obtained excellent results via the TRO and Preliminary Injunction;

25) Plaintiffs incurred reasonable attorney's fee to vindicate the interests protected by the 14th Amendment of the United States Constitution;

26) Plaintiffs' counsel reasonably expended time, money, and effort interviewing the plaintiffs; reviewing HSS documents and correspondence; reviewing HSS statutes and regulations; conducting legal research; corresponding with HSS; preparing the complaint and emergency pleadings in response to HSS misconduct; reviewing financial records; interviewing witnesses; issuing witness subpoenas; preparing plaintiffs for trial; preparing trial briefs for the Court; responding to Quick's motion to dismiss; presenting the evidence in trial; preparing the consent motions; and monitoring compliance;

27) Mr. Tate is a civil trial attorney with a complex litigation practice focusing primarily on § 1983 constitutional claims and consumer protection statutes. Mr. Tate litigates these matters in both federal and state courts, and before the corresponding administrative bodies. Mr. Tate's hourly rate for § 1983 litigation is $375, which is customary in the St.

Louis metropolitan area. In emergency matters requiring temporary restraining orders and preliminary injunctions, Mr. Tate's hourly rate is $500.00;

28) Mr. Gray is also a civil trial litigator with a practice focusing primarily on employment discrimination and other complex matters. Mr. Gray litigates these matters before the federal and state courts and/or corresponding administrative bodies. Mr. Gray's hourly rate is $375.00, which is customary in the St. Louis metropolitan area;

29) For this Court's review, plaintiffs' counsel has attached a detailed statement of hours reasonably expended to obtain the Preliminary Injunction. Plaintiffs' counsel has eliminated from the detailed statement any arguably unreasonable or unnecessary hours expended;

30) Accordingly, plaintiffs hereby request $ 87,075.00 as and for interim attorney's fees and costs pursuant to 42 U.S.C. § 1988;

For all of the foregoing reasons and those more fully explained in the corresponding Memorandum in Support of Motion, plaintiffs pray for an Order awarding plaintiffs $ 87,075.00 as and for attorney's fees, costs, and for whatever other relief this honorable Court deems necessary and appropriate.

Respectfully submitted,

| THE TATE LAW FIRM, LLC | JOHNSON GRAY LLC |
|---|---|
| /s/ Rufus J. Tate, Jr. | /s/ Anthony D. Gray |
| Rufus J. Tate, Jr. 46993MO | Anthony D. Gray 51534MO |
| 7751 Carondelet, Suite 803 | 7710 Carondelet, Suite 303 |
| Clayton, MO 63105-3369 | St. Louis, MO 63105 |
| 314.726.6495 Office | 314.385.9500 Office |
| 314.726.0424 Fax | 314.594.2052 Fax |
| tatelawfirm@gmail.com | agray@johnsongraylaw.com |
| *Counsel for Plaintiffs* | *Counsel for Plaintiffs* |

<u>Certificate of Service</u>

      I hereby certify that on January 29, 2014, I delivered an exact duplicate of the foregoing Motion for Attorney's Fees Against Kathy Quick in her Official Capacity to:

Dana W. Tucker, Esq.
Denise McElvein, Esq.
Office of the Missouri Attorney General
815 Olive Street
St. Louis, MO 63101
dana.tucker@ago.mo.gov
denise.mcelvein@ago.mo.gov
*Counsel for Defendant Quick*